#30440-a-PJD
**2024 S.D. 83**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SAMANTHA BRAUN,                              Plaintiff and Appellant,

    v.

RADENA WOLLMAN,                              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

ALISON M. BAKKEN
SEAMUS W. CULHANE of
Turbak Law Office, P.C.
Watertown, South Dakota                      Attorneys for plaintiff
                                             and appellant.


MARK J. ARNDT
DELIA M. DRULEY of
Evans, Haigh & Arndt, LLP
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellee.

* * * *

CONSIDERED ON BRIEFS
MARCH 19, 2024
OPINION FILED **12/26/24**

#30440

DEVANEY, Justice

[¶1.]     This appeal relates to Samantha Braun's damages claim for injuries resulting from a car accident in 2017 in which Radena Wollman rear-ended Braun. Wollman admitted fault for the accident, and during a jury trial to determine damages, the circuit court admitted some of Braun's medical records over her objections, finding sufficient foundation and applying the business records hearsay exception. At the conclusion of the trial, the jury awarded Braun $125,000 in damages, a much lower amount than what she had requested. Braun appeals, alleging the court abused its discretion in admitting her medical records and, as a result, substantially prejudiced her right to a fair trial. We affirm.

**Factual and Procedural Background**

[¶2.]     On July 24, 2017, Wollman and Braun were both driving in Aberdeen when Wollman, who was traveling at a speed of approximately 30 mph, rear-ended Braun's car while it was stopped at an intersection. Immediately following the accident, a paramedic with the Aberdeen Advanced Care Ambulance evaluated Braun at the scene. Braun mentioned right elbow pain and a potential bruised chest, but she denied loss of consciousness and did not believe she had hit her head. After the evaluation, Braun declined transport to the emergency room (ER) but later visited the ER on her own.

[¶3.]     According to Braun, in the days and months after the accident, she experienced pain, vision and cognitive issues, and emotional disturbances. In November 2019, Braun commenced a personal injury lawsuit against Wollman alleging negligence and seeking damages for personal injuries, pain, suffering,

-1-

mental anguish, and loss of enjoyment of life. In Wollman's answer to Braun's complaint, she conceded that her negligence caused the collision but disputed the extent of the damages suffered by Braun and whether the accident was the legal cause of her claimed damages.

[¶4.] During a June 2023 jury trial on the sole issue of damages, Braun provided testimony describing her educational and social background prior to the car accident. At the time of the accident, she was twenty-nine years old and living in Groton, South Dakota. She was married, but she characterized the relationship as emotionally abusive. Braun further testified that she has two bachelor's degrees, a master's degree in education, and a certificate in information technology, which she obtained while maintaining a 4.0 grade point average. At the time of the accident, Braun was working on her doctorate degree.

[¶5.] In the spring of 2017, Braun started working at what she called her "dream job" as an education manager/coordinator at Northeast South Dakota Head Start Program, Inc. In this role, she primarily supervised the staff, including teachers and assistants, and educated them as their roles changed.

[¶6.] In early 2018, during her regular performance evaluation at Head Start, her supervisor informed her that other coordinators complained about her prolonged absences from work that occurred while she was seeking treatment and physical rehabilitation related to the accident. Her supervisor further referenced Braun's behavioral changes and told her she should seek counseling. Braun was ultimately terminated from her position at Head Start in February 2018. Around

this same timeframe, she filed for a protection order and a divorce from her husband.

[¶7.] After she was terminated from Head Start, Braun became an optician at Vision Care Associates where she sold and repaired eyewear, but she was let go shortly thereafter due to her lack of communication. Braun then sought out vocational rehabilitation to help her find a job that complemented her education and experience. She testified that she wanted to teach preschool or kindergarten but could not find a teaching position in South Dakota. However, she eventually moved to Gambell, Alaska, where she was hired to teach kindergarten.

[¶8.] At trial, Braun described her medical and mental health conditions before and after her accident and recounted the various treatment providers she has since seen. She testified that she suffered a traumatic brain injury as a result of the car accident and that it has permeated her daily life and worsened her anxiety and depression.

[¶9.] On cross-examination, Wollman's counsel offered many of Braun's medical records as exhibits. To lay a foundation, counsel asked Braun to identify the Bates stamp number on the documents, the date of each visit, the treating provider, and the fact that the documents contained her name. However, when specifically asked if these were her records, she generally denied the ability to state for certain whether they were. Braun's counsel objected to the admission of several, but not all, of the records on hearsay and lack of foundation grounds. The circuit

court overruled most of Braun's objections and admitted the records under the business records exception to the hearsay rule.[1]

[¶10.] The exhibits admitted over Braun's objections included reports from the ambulance staff on the date of the accident, an ER physician, her primary care physicians, psychiatrists, and a neurologist. Wollman's counsel used these records to elicit more specific testimony from Braun about the conditions she reported and her diagnoses and treatment by various health professionals since the accident.

[¶11.] The records at issue contain answers to the screening questions typically asked during a doctor's appointment, along with summaries of personal and family medical history and social history. Most describe and recount general information related to Braun's physical and mental health at the time of the visit, but all include statements made by Braun describing the reason for the visit and her self-report of any symptoms or issues that she was experiencing at the time. These documents also contain statements and observations made by the respective care providers, test results, diagnoses, overall assessments, and treatment plans.

[¶12.] In particular, according to the ER record (Exhibit C), Braun reported neck pain and chest pain, and the ER physician ordered a CT scan and an x-ray, neither of which showed any abnormalities. This record also includes the

---

1. On appeal, Braun contests the court's admission of Exhibits A, C, H, I, N, O, Q, R, S, T, and Y. Although Braun also refers to Exhibit P in her appellate brief, the court sustained an objection to this exhibit on relevance grounds and it was not admitted. Braun did, however, read a few lines from Exhibit P during her cross-examination. In addition to sustaining an objection to Exhibit P, the court also sustained objections to, and did not admit, two other records (Exhibits B and D), not on the foundation or hearsay grounds raised by Braun but instead, because the court deemed them irrelevant or cumulative.

physician's note that Braun was to return to the ER if symptoms worsened or check in with her primary doctor.

[¶13.] The record of Braun's initial visit with Dr. Snow, her primary care doctor, (Exhibit H) indicates Braun reported having daily headaches, some nausea, and difficulty in her ability to concentrate and focus. Dr. Snow noted that she could have a mild traumatic brain injury (TBI) with associated concussion symptoms, even though no head trauma had been reported and her head CT was otherwise normal. Dr. Snow referred Braun to physical therapy and to a neurologist.

[¶14.] The report of Dr. Mosada, a neurologist, (Exhibit I) contains his August 2017 evaluation of Braun regarding her reported headaches, short term memory issues, dizziness, difficulty finding and spelling words, and sensitivity to light and sounds. It also contains notes regarding his neurological examination, which state that Braun has "fair memory for remote and recent events" and no difficulty following simple and complex commands. It also relates that her pupils reacted to light equally, she had no visual field or sensory issues, and her coordination was intact. The record includes Dr. Mosada's opinion that Braun's "myriad of symptoms" is "most likely related to post concussive syndrome." Dr. Mosada did not order any follow-up exams or imaging but recommended that she continue taking a muscle relaxer and continue with her physical therapy.[2]

---

2. Although not at issue in this appeal, the physical therapy records (Exhibit 1) admitted at trial through a video deposition of Braun's physical therapist show that Braun engaged in physical therapy rehabilitation from August 2017 through April 2018 for neck, shoulder, and low back pain, and for vision disturbance. She self-reported "great overall improvement" and was discharged with instructions to continue her exercises at home. Braun also

(continued . . .)

[¶15.]     Exhibits N, O, and Q contain information from Braun's later visits with Dr. Snow. Exhibit N reflects that Braun saw Dr. Snow in April 2018 for a recheck on her anxiety and depression, conditions that, according to that record, predated Braun's car accident. This exhibit also notes that Braun was not experiencing pain and was in no acute distress, but she was experiencing numbness and tingling in her hands. Exhibit O is a record of Braun's pre-carpel tunnel surgery visit to Dr. Snow in May 2018. At that time, Braun reported no headaches or vision changes, and Dr. Snow noted that she was "grossly intact" neurologically.

[¶16.]     Braun also saw Dr. Snow in October 2018, and the notes from this visit (Exhibit J) state that she was requesting a referral to a neuropsychologist and was attempting to qualify for disability services at her college.[3] She reported experiencing a decline in her writing ability, issues with memory and recall, and difficulty concentrating. This record recounts the treatment she has received since the car accident and notes her "extensive history of anxiety and depression." It also includes Dr. Snow's recommendation that Braun undergo a further neurologic evaluation and an MRI, "if indeed she has had a traumatic brain issue."[4] It further

_____

(. . . continued)
      presented video deposition testimony from her optometrist regarding her post-accident peripheral vision loss.

3.     Braun testified that her attorney suggested she see Dr. Swenson, the neuropsychologist who provided expert testimony on her behalf at trial. Braun provided his name to Dr. Snow at this visit.

4.     Although not at issue in this appeal, a report from a February 2019 visit (Exhibit J) with a neurologist, Dr. Persson, was admitted *with no objection* from Braun's counsel. It contains a detailed history recounting Braun's reported issues after the accident, along with various life events that have

(continued . . .)

relates Dr. Snow's explanation to Braun that "some of this certainly could be from some of the medications that she is on for her anxiety and depression." Dr. Snow recommended that Braun follow up with an appointment with her psychiatrist to re-evaluate her medications.

[¶17.]      Exhibits R and S are reports from Braun's visits with another primary care provider, Dr. Olson: one from June 2019 for a medication recheck for her anxiety and depression, and the other from August 2019 regarding a preemployment physical, in which Dr. Olson notes Braun was "doing well no concerns." Also during this timeframe, Braun visited her psychiatrist, Dr. Deng, and the record from a July 2019 visit (Exhibit T) relates Braun's report that both her anxiety and depression had been getting better.

[¶18.]      The final challenged exhibit is a record from a virtual visit with another psychiatrist in January 2021 (Exhibit Y), and it contains a very detailed personal and relationship history going back to Braun's childhood. Braun objected to Exhibit Y on foundation and hearsay grounds and also argued it was irrelevant and unfairly prejudicial. She requested redaction of the irrelevant portions of the

---

(. . . continued)

> since occurred in her education, career, and personal life. It also contains a record review of reports from her psychiatrist and the August 2017 neurology exam and CT scan completed immediately after the accident. The assessment and plan after this visit notes Braun's anxiety and depression and her reports of sleep difficulties, cognitive diminishment, and mood troubles. It notes that her neurological exam is "largely unremarkable" and that her "[p]resentation is most consistent with persistent postconcussive syndrome which is more common in patients with an underlying mood disorder." It concludes with a statement that Dr. Persson "suspect[s] her cognition will improve with decreased anxiety, reassurance, and cognitive rehab."

record. In response, Wollman's counsel advised that it was only being offered for one sentence relating to a different car accident, but instead of ordering a redaction, the circuit court instructed the jury that the record was only being admitted for the first sentence.

[¶19.] In addition to her own testimony, both Braun and Wollman offered testimony from expert witnesses who relied on Braun's medical records in forming their opinions. Braun presented video deposition testimony from Dr. Chaudry, a diagnostic radiologist, regarding his review of an MRI that had been ordered in conjunction with the litigation in August 2021, four years after the accident. Dr. Chaudry testified that it is not uncommon to find no abnormalities on initial scans after a brain injury and that a "coup-countercoup injury" (also known as whiplash) could occur without hitting one's head on something. He noted that Braun's MRI showed evidence of brain hemorrhaging and atrophy (shrinkage) consistent with a traumatic brain injury. He testified that this could cause headaches and issues with working memory, language, and vision.

[¶20.] Braun also presented a video deposition of Dr. Swenson, a clinical neuropsychologist who evaluated her in January 2019. He relied on Braun's medical records and his own clinical examination of Braun in forming his opinions. Dr. Swenson testified that Braun "no doubt" sustained a mild traumatic brain injury from the car accident which impacted her executive and emotional functions. Dr. Swenson opined that although Braun had shown some improvements during her recovery, she suffered from ongoing persistent cognitive, emotional, and physical injuries resulting from the crash. He further opined that she would

continue to live with these injuries for the rest of her life. On cross-examination, Wollman's counsel asked Dr. Swenson about many of the details in the above-mentioned records, including the ER record, the initial CT scan, and the neurology reports.

[¶21.]	In her defense, Wollman presented live testimony from her expert, Dr. Tranel, a clinical neurologist and professor of neurology and psychology at the University of Iowa. Dr. Tranel testified that he also reviewed Braun's medical records in forming his opinion. He related the information contained in records from the ER, Dr. Snow, and Braun's treating neurologist. After assessing Braun's ER reports and the CT scan from the date of the accident, Dr. Tranel concluded that Braun did not suffer from any neurological abnormalities. Dr. Tranel also found significant Braun's pre-accident history of anxiety and depression. He explained that those with a history of psychiatric issues and mood disorders can be more susceptible to the effects of a mild TBI.

[¶22.]	In addition to his medical record review, Dr. Tranel evaluated Braun in person at his clinic in July 2021, where she completed cognitive ability tests to assess such things as memory, problem solving, language, executive functioning, and processing speed. Based on his evaluation, he ultimately concluded that Braun had normal, intact cognitive functioning for a person with her educational and occupational background and that she did not require ongoing psychological treatment for any issues caused by her 2017 car accident. Dr. Tranel noted that Dr. Swenson's evaluation was conducted two years prior to his, and he opined that

Braun's performances on the more recent executive function test showed that she had fully recovered.

[¶23.]    Wollman also presented expert testimony via video deposition from an ophthalmologist, Dr. Osmundson, who had likewise reviewed Braun's medical records, including Braun's EMT and ER records, CT scan, and the exams conducted by her optometrist both before and after the accident. Dr. Osmundson related information contained in these records during his testimony. Based on his review of these records, he concluded that the vision issues Braun was currently experiencing could not be attributed to any trauma related to her car accident.

[¶24.]    At the conclusion of trial, Braun's counsel asked the jury to award her six million dollars to account for what she had suffered in the five and a half years since the accident and for what she would suffer in the next 48 years given her life-expectancy. Ultimately, the jury determined, via a special verdict form, that Wollman's negligence legally caused injuries to Braun and awarded her $125,000 in damages: $65,000 in general damages for "pain, suffering, physical injury, past mental anguish and loss of the capacity to enjoy life" and for these same injuries "likely to be experienced in the future"; and $60,000 for "any disability [she] experienced in the past as a result of the injuries she sustained" or "is reasonably certain to experience in the future."

[¶25.]    Braun appeals, asserting the following issues for our review:

1.    Whether the circuit court abused its discretion when it allowed defense counsel to admit various medical records.

2.    Whether the admission of medical records prejudiced Braun's substantial rights.

**Standard of Review**

[¶26.]    The circuit court's evidentiary rulings are presumed correct, and they are reviewed only for an abuse of discretion. *Sawyer v. Farm Bureau Mut. Ins. Co.*, 2000 S.D. 144, ¶ 26, 619 N.W.2d 644, 651. "[A]dmission of evidence in violation of a rule of evidence is an error of law that constitutes an abuse of discretion." *State v. Stokes*, 2017 S.D. 21, ¶ 12, 895 N.W.2d 351, 354. "To establish reversible error with regard[ ] to an evidentiary ruling, 'a defendant must prove not only that the trial court abused its discretion in admitting the evidence, but also that the admission resulted in prejudice.'" *State v. Loeschke*, 2022 S.D. 56, ¶ 46, 980 N.W.2d 266, 280 (citation omitted). An error is deemed prejudicial when there exists "a reasonable probability that, but for the error, the result of the proceeding would have been different." *State v. Carter*, 2023 S.D. 67, ¶ 25, 1 N.W.3d 674, 686.

**Analysis and Decision**

### 1.    *Whether the circuit court abused its discretion when it allowed defense counsel to admit various medical records.*

[¶27.]    Braun contends that the circuit court committed reversible error when it admitted her medical records. At trial, Braun objected to their admission and asserted a lack of foundation and argued that they contain inadmissible hearsay statements. The court overruled her objection and admitted these records, citing the business records exception to the hearsay rule under SDCL 19-19-803(6) (Rule 803(6)). On appeal, Braun argues that the business records exception was not satisfied because Wollman did not offer the testimony of a custodian or other qualified witness to meet the necessary foundational requirements.

[¶28.]     In response to Braun's argument regarding lack of foundation, Wollman argues the exhibits were admissible because they were properly authenticated under SDCL 19-19-901 (Rule 901). This statute provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." In particular, Wollman claims Braun's testimony was sufficient to authenticate the records under Rule 901(b)(1), which allows for authentication to satisfy the requirement in Rule 901(a) via the "[t]estimony of a witness with knowledge . . . that an item is what it is claimed to be." She alternatively asserts that the contested exhibits were properly authenticated under Rule 901(b)(4), which provides that "[d]istinctive characteristics" such as "[t]he appearance, contents, substance, internal patterns, or other characteristics of them, taken together with all the circumstances" can authenticate a proffered item of evidence. Finally, she argues that regardless of any foundational issues, the exhibits were admissible under other rules governing hearsay evidence.

        A.     *Foundation*

[¶29.]     This Court, in *Stokes*, previously addressed the interplay between authentication and foundation, two different, but related, requirements. In that case, the defendant challenged the circuit court's admission of a cell phone log under the business records exception, and the State, like Wollman, claimed the records were properly admitted because the defendant "authenticated" the record under Rule 901(b)(1) and (6) by identifying the phone number on the record as his

number and by testifying that the carrier identified on the record was his cell phone carrier. *Stokes*, 2017 S.D. 21, ¶ 17, 895 N.W.2d at 356.

[¶30.] When analyzing this issue, we found the State's reliance on the authentication rules to be misplaced "because it is based on the erroneous premise that *authentication* of a document satisfies the *foundational* requirements necessary to qualify for a hearsay exception." *Id.* ¶ 18. We explained that authentication "only concerns the production of 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Id.* (quoting SDCL 19-19-901(a)). In contrast, the foundational element of the business records exception "requires more." *Id.* We therefore noted that "a proponent seeking admission must not only authenticate in accordance with SDCL 19-19-901 (show that the exhibit is a record of what the proponent claims it is), the proponent must also lay the foundation required in SDCL 19-19-803(6) (show that the exhibit was kept and prepared in the course of a regularly conducted business activity)." *Id.* As such, we further noted that the foundation for admissibility under Rule 803(6) must be established by "the custodian or another qualified witness," either through testimony or a written certification; that "the record was made at or near the time of the recorded act, event, condition, opinion, or diagnosis by—or from information transmitted by—someone with knowledge; that the record was kept in the course of a regularly conducted activity of the business; and that making the record was a regular practice of that activity." *Id.* ¶ 14, 895 N.W.2d at 355 (citing SDCL 19-19-803(6)(A) to (D)).

[¶31.]     Applying this reasoning, we rejected the State's argument that Stokes's admissions regarding certain entries on the cell phone record, none of which included testimony regarding the business activity that created the record, satisfied the foundational requirements to admit the exhibit. *Id.* ¶ 16. We explained that even under a "very broad interpretation" of the phrase "other qualified witness . . . the witness must nonetheless possess 'enough familiarity with the record-keeping system of the entity in question to explain how the record came into existence in the course of a regularly conducted activity of the entity.'" *Id.* ¶ 16, 895 N.W.2d at 356 (citation omitted). Because Stokes lacked such familiarity, the Court found that he could not be deemed a "qualified" witness with the requisite knowledge to lay a proper foundation. *Id.*

[¶32.]     Here, instead of offering testimony or a written certification from care providers or records custodians as to how or when Braun's medical records were prepared and kept in the regular course of business, Wollman asserted that Braun could provide sufficient foundation for admissibility by identifying her name, care provider, and the date of the visit for each of these exhibits.[5] But this is essentially

---

5.     On appeal, Wollman's counsel filed a motion to supplement the record to further support her claim that Braun provided sufficient foundation for these records. Her motion sought to include Braun's answers to interrogatories in which she produced her medical records. Wollman asserted that these responses show that she has admitted the authenticity of her own medical records. Braun objected to this request because this information was not presented to the circuit court, and we denied the motion to supplement. Wollman nevertheless represents in her appellate brief that Braun had produced these documents in response to discovery asking for her medical records, and Braun does not dispute this representation in her reply brief. But even if we accepted this representation, the premise that the identification and production of records in response to an interrogatory

(continued . . .)

the same argument that we rejected in *Stokes*. Like Stokes, Braun lacked the requisite knowledge to explain how the records came into existence. She could not, therefore, be deemed "another qualified witness" who could provide the foundation necessary to admit the records under the Rule 803(6) exception. *See State v. Dickerson*, 2022 S.D. 23, ¶ 46, 973 N.W.2d 249, 265 (finding that a witness's testimony alone was insufficient to establish a foundation for bank records detailing various debit card transactions because he did not claim to be familiar with the bank's recordkeeping or preparation practices).

### B. Hearsay

[¶33.]     Wollman argues that notwithstanding the foundational issues for admitting the medical records under Rule 803(6), they were admissible under other rules governing hearsay evidence. She contends Braun's statements to her medical providers were admissible as non-hearsay statements by an opposing party under SDCL 19-19-801(d)(2)(A) (Rule 801(d)(2)(A)). She further argues that statements in Braun's medical records were admissible under SDCL 19-19-803(4) (Rule 803(4)) because they "are pertinent to her medical diagnosis, treatment and medical history."

---

(. . . continued)

constitutes sufficient foundation for the admission of a business record was rejected in *Sawyer*. *See* 2000 S.D. 144, ¶ 26, 619 N.W.2d at 651 (finding that records produced by the defendant during discovery could not be admitted by the plaintiff under the business records exception without foundational testimony). Moreover, because the discovery documents were not provided to the circuit court prior to its rulings on Braun's objections, Wollman cannot now use them in an attempt to cure the lack of foundation when the records were offered at trial.

[¶34.]    Wollman did not specifically raise these arguments before the circuit court, but when the circuit court overruled Braun's hearsay objections, it did so without allowing argument from counsel.  In fact, the circuit court *sua sponte* admitted these contested exhibits under the business records exception in SDCL 19-19-803(4).  This Court has noted our "well-entrenched rule" that "[e]ven if the circuit court provided the wrong authority, [its ruling] 'may still be upheld if it reached the right result for the wrong reason.'" *Pfuhl v. Pfuhl*, 2014 S.D. 25, ¶ 7, 846 N.W.2d 778, 780 (citation omitted).  Because both parties have had the opportunity on appeal to brief whether the exhibits were admissible under other rules of evidence, we examine whether the court reached the right result despite its erroneous reliance on the business records exception.

[¶35.]    The admissibility of statements of a party opponent are governed by SDCL 19-19-801(d)(2)(A), which states that an opposing party's statement is not hearsay so long as: (1) the statement is offered against an opposing party, and (2) it was made by the party in an individual or representative capacity.  To the extent *Braun's own statements* reflected in the medical records were offered against her, they are *not* hearsay and were admissible under Rule 801(d)(2)(A).  However, these medical records also include statements by her treating providers relating their observations, diagnoses, and recommendations.  Such statements do not fall within the parameters of Rule 801(d)(2)(A).  Therefore, while Braun's statements contained

within these records were admissible as nonhearsay statements from a party

opponent, the same cannot be said for the remaining content in the records.[6]

[¶36.]    There are similar problems with accepting Wollman's argument that

Braun's medical records were admissible under SDCL 19-19-803(4).  Rule 803(4)

operates as an exception to the hearsay rule and allows for the admission of

statements made for the purpose of medical diagnosis or treatment.  Under this

rule, "[a] statement that: (A) [i]s made for—and is reasonably pertinent to—medical

diagnosis or treatment; and (B) [d]escribes medical history; past or present

symptoms or sensations; their inception; or their general cause" may be admitted

under Rule 803(4).  This exception applies to Braun's statements that meet the

above criteria.  It does not, however, apply to statements from others contained in

these records.

[¶37.]    The medical providers' statements contained in the exhibits at issue,

including their observations, diagnoses, and treatment plans, are *not* admissible

under Rule 803(4).  In *Stull v. Fuqua Industries, Inc.*, the court explained that

because "[t]he medical records exception to the hearsay rule assumes that a person

making a statement for the purpose of obtaining medical diagnosis or treatment

will likely tell the truth to a medical person and that the statement is therefore

---

6.    Braun also objected to the exhibits at issue on the grounds that they contain hearsay within hearsay.  A hearsay statement is any out-of-court statement used to prove the truth of the matter asserted.  SDCL 19-19-801(c).  Braun notes that an exception must apply to each level of hearsay in order to admit the entire record.  SDCL 19-19-805.  However, Wollman could properly cross-examine Braun about her own statements as recorded by the medical providers and she was free to refute or disagree that she had made them.  It does not appear from her testimony that she disputed making the statements about which she was questioned.

inherently reliable[,]" the exception applies to statements made by the person seeking treatment.  906 F.2d 1271, 1273–74 (8th Cir. 1990); *see also Field v. Trigg Cnty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) (agreeing that the hearsay exception set forth in Rule 803(4) "applies only to statements made by the one actually seeking or receiving medical treatment."); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) (holding that "Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient"); *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985) (per curiam) (holding that "Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse").

[¶38.]      Because the medical providers' statements cannot be admitted under Rule 803(4), another applicable exception, such as the business records exception in Rule 803(6), must be met to admit medical records containing such statements. Here, Wollman failed to lay a proper foundation for admission under Rule 803(6). Therefore, the circuit court abused its discretion by admitting the contested records in their entirety.

### C.      Balancing test under SDCL 19-19-403

[¶39.]      Braun further contends that even if any of the evidence contained within the medical records was otherwise admissible, the circuit court nevertheless abused its discretion by not excluding certain statements that she alleges were inadmissible under SDCL 19-19-403 (Rule 403).  In particular, Braun argues Exhibit Y, the record of her virtual visit with a psychiatrist, should have been redacted because it contains information about her familial and romantic

relationships and her sexual identity and describes various traumatic events in her life going back to her childhood.[7]

[¶40.] Wollman responded to Braun's objection below by asserting that her questions would be limited to the first sentence under the progress note of the exhibit, which pertained to Braun being in another car accident. Braun agreed that the first sentence was admissible, but she asked that the rest of the record be redacted. The circuit court did not require redaction. Instead, the court allowed the entire record to be admitted into evidence, but then advised the jury that it was only being admitted "for the purposes of the first sentence."

[¶41.] On appeal, Wollman focuses on the circuit court's instruction to the jury and notes that "[t]here is no evidence to indicate that the [j]ury did not follow the [c]ircuit [c]ourt's instruction." Relatedly, Wollman notes that she did not draw the jury's attention to any other information in the record besides the later accident and did not make references to Exhibit Y in closing argument.[8] These arguments

---

7. Contrary to Wollman's claim on appeal that Braun did not make any Rule 403 objections at trial, the record reveals that Braun did timely object to the admission of Exhibit Y based on both relevance and unfair prejudice grounds. On appeal, Braun also challenges the relevance and prejudicial nature of statements elicited during her testimony regarding Exhibit P, which noted her complaint of a lesion on her back being enflamed because of her bra continuing to rub this area. She further challenges the admission of her statements relating to her gynecological care, as noted in other records. However, it does not appear that Braun objected to this particular testimony on relevance or Rule 403 grounds.

8. She also claims that Exhibit Y was admissible in its entirety because Braun put her mental and emotional state at issue given the nature of the damages she was seeking. However, Wollman did not file a notice of review challenging the court's oral instruction to the jury limiting the purpose for which Exhibit Y was being admitted. We therefore decline to consider this

(continued . . .)

pertain to whether or how the admission of this record may have impacted the jury, not whether the admission itself was proper. It is clear that despite the relevance of the first sentence in Exhibit Y, the remainder of the exhibit contains information that is either irrelevant or of a nature such that the probative value of the exhibit, when admitted in its entirety, is substantially outweighed by the danger of persuading the jury by illegitimate means. *State v. Shelton*, 2021 S.D. 22, ¶ 17, 958 N.W.2d 721, 727 (defining what constitutes unfair prejudice). Therefore, the circuit court abused its discretion by not redacting all but the statement in Exhibit Y that relates to Braun's later accident.

### 2. *Whether the admission of Braun's medical records prejudiced Braun's substantial rights.*

[¶42.] To the extent the circuit court erred in admitting some or all of the medical records at issue, to prove *reversible* error, Braun must also establish that the court's error substantially prejudiced her rights. To prove substantial prejudice, a party must prove that there exists "a reasonable probability that, but for the error, the result of the proceeding would have been different." *Carter*, 2023 S.D. 67, ¶ 25, 1 N.W.3d at 686 (alteration in original) (citation omitted). This requires an examination of the overall record to determine if there exists a reasonable probability the jury would have reached a damages verdict that was more favorable to Braun had the improper evidence not been admitted.

---

(. . . continued)
claim. *Johnson v. Radle*, 2008 S.D. 23, ¶ 19, 747 N.W.2d 644, 652 (providing that "defendants did not file a notice of review on this issue, and therefore, they have waived it").

[¶43.] First, it is important to consider the evidence that was admitted at trial without objection and presented to the jury. Both Braun and Wollman presented testimony from expert witnesses and from Braun's treatment providers who relied on the medical records at issue in forming their opinions and when explaining their conclusions. On many occasions, these witnesses referred to information reported by Braun or to observations or assessments made by the providers in the records they had reviewed. Neither party objected to the introduction of such testimony, even though no testimony from some of these other providers had been offered at trial.

[¶44.] Second, during direct examination, Braun testified about her social and medical history and her divorce. Also, she was properly questioned on cross-examination about her pre- and post-accident medical and mental health conditions and injuries and the corresponding medical treatment that she had received. Therefore, over the course of the trial, the jury was presented with a significant amount of information from both parties through witness testimony, whether directly or summarily, about Braun's personal and medical history and other information contained in the treatment records at issue. Braun cannot, therefore, establish that she was prejudiced when substantially the same information contained in these challenged medical records was introduced without objection through her own testimony and through other witnesses.

[¶45.] As to Braun's specific complaints relating to the improper admission of Exhibit Y, which contains information beyond her statement about a prior car accident, when admitting the exhibit, the circuit court advised the jury: "[I]t's only

admitted for the purposes of the first sentence, so when it's published, that is what you would review, and that's the only reason that it's being admitted, not for anything else contained therein." We presume the jury follows a trial court's instructions. *See Shelton*, 2021 S.D. 22, ¶ 30, 958 N.W.2d at 731. After the circuit court's ruling, Wollman's counsel did not ask to publish the record to the jury and did not mention any of the other details in the remainder of Exhibit Y when cross-examining Braun or in closing argument. Therefore, Wollman has not established prejudice as to the court's error in admitting Exhibit Y.

[¶46.] Based on the trial record as a whole, Braun has not demonstrated that the circuit court's error in admitting the medical records in their entirety substantially prejudiced her rights. The jury ultimately found in favor of Braun by finding that she suffered injuries caused by Wollman's negligence and then awarded her $125,000 in damages. This is not a nominal amount, and although Braun's counsel asked the jury to award her six million dollars, we would have to speculate whether the wrongful admission of any particular medical record may have resulted in a higher verdict. Although in a slightly different context of determining whether a damages verdict was supported by the evidence, this Court has held that when "considering the verdict of a jury in any particular case . . . we are not to speculate or query how we would have viewed the evidence and testimony, or what verdict we would have rendered had we been of the jury." *Bakker v. Irvine*, 519 N.W.2d 41, 49 (S.D. 1994) (citation omitted). This is particularly so in a case where plausible competing expert testimony was presented to the jury. Here, the jury may very well have accepted the testimony from Wollman's experts that some of Braun's current

injuries were preexisting or unrelated to the car accident or that she had significantly recovered from any injuries that were caused by the car accident. Therefore, from our review of the trial record, we conclude that Braun has not demonstrated prejudicial error.

[¶47.] Affirmed.

[¶48.] JENSEN, Chief Justice, and SALTER, Justice, concur.

[¶49.] KERN and MYREN, Justices, concur in part and dissent in part.

KERN, Justice (concurring in part and dissenting in part).

[¶50.] I concur in the majority's determination that the circuit court abused its discretion by admitting the contested medical records in their entirety. However, I agree with Justice Myren that the majority's conclusion—that Braun was not prejudiced by the erroneous admission—is incorrect. The majority asserts that "substantially the same information" contained in the challenged records was presented through Braun's testimony and the testimony of other witnesses. Yet, Wollman urged the jury to make their determination based on the records—not the expert testimony, not Braun's own testimony, but rather the erroneously admitted medical records. This point is well exemplified by Wollman's closing argument. Wollman began the argument by stating, "[B]efore we started this trial there maybe was some sense that you weren't going to be able to see the actual medical evidence, the actual medical records of Ms. Braun and her treatment with her providers following the accident, but now you have. And most of our case, most of our defense, I'm going to ask you to consider those medical records and base your decisions on those records." Wollman then proceeded to place primary focus on the records,

pointing out specific, verbatim passages depicting the medical opinions of Braun's providers.[9] Critically, none of these providers testified, and as the majority points out, the foundation for the records was lacking and they should not have been admitted at all.

[¶51.] Without the improperly admitted medical records, the jury was presented with conflicting expert testimony, which was within their purview to resolve. However, by admitting the contested medical records in their entirety, the circuit court permitted Wollman to introduce compelling hearsay statements that, by Wollman's own admission and urging, could form the sole basis for the jury's verdict.

[¶52.] The prejudice to Braun was further compounded by the highly personal, irrelevant, and prejudicial information contained within some of the records, which were sent to the deliberation room with the jury. With access to Braun's unredacted medical records, the jury was exposed not only to inadmissible hearsay statements, but also to a detailed summary of Braun's reported significant life events from 2001 through 2019, including intimate details about her sexuality and a series of unsuccessful romantic and sexual relationships. This information served no purpose but to paint Braun in a poor light and should never have been admitted. All of these statements which were included within Exhibit Y were objected to by Braun on the grounds of hearsay, relevance, unfair prejudice, lack of

_____

9. The challenged records were from Dr. Olson, Braun's primary care physician, Dr. Deng, her psychiatrist, and Dr. Snow, her former primary care physician. Wollman also admitted records generated from the ambulance transport, the emergency room visit, and Exhibit Y, a report generated from a psychiatric telehealth visit with therapist Sheeba Fazili.

foundation and lack of probative value.  In response, Wollman's counsel indicated that his questioning would be limited to the first sentence of the document, detailing Braun's statement that she had been in another car accident.  After the circuit court overruled Braun's objection, her counsel requested that the remaining information in Exhibit Y be redacted.  However, the circuit court, without explanation and without conducting the balancing required under Rule 403, refused to do so.[10]  While we presume that juries follow the instructions given to them by the court, all but the first sentence of this highly prejudicial and irrelevant report was unnecessarily and unfairly admitted and sent to the jury.

[¶53.]        On this record, Braun has established that but for the improper admission of her medical records, there is "a reasonable probability that . . . the result of the proceeding would have been different."  *State v. Carter*, 2023 S.D. 67, ¶ 25, 1 N.W.3d 674, 685.  She should, therefore, receive a new trial.

MYREN, Justice (concurring in part and dissenting in part).

[¶54.]        I join the majority opinion and its conclusion that the circuit court made multiple errors in the admission of evidence.  I dissent from the majority opinion in its assessment of the effect of these errors.

---

10.     As noted by the majority opinion, the court did give the jury a limiting instruction at the time the exhibit was admitted stating in front of the jury: "I'm not going to redact it but just instruct the jury that it's only admitted for the purposes of the first sentence, so when it's published, that is what you would review, and that's the only reason that it's being admitted, not for anything else contained therein."  Wollman's counsel indicated he would not publish the exhibit to the jury during trial, but it was *sent to the jury with the other exhibits at the conclusion of the trial*.  Further, an instruction reminding the jury regarding the proper use of Exhibit Y was not given in writing with the final instructions of the court.

#30440

[¶55.] Wollman conceded that her negligence caused the accident but disputed the damages claimed by Braun. The jury determined that Braun suffered injuries caused by Wollman's negligence. Although Braun requested six million dollars, the jury ultimately awarded $125,000.

[¶56.] The rules of evidence are designed to prevent a finder of fact from receiving inadmissible information. In violation of those rules of evidence, this jury was presented with exhibits that included statements by Braun's treating providers relating to their observations, diagnoses, and recommendations related to her. Moreover, the jury improperly received records from Braun's psychiatrist that included information about her relationships with her family and her romantic partners, her sexual identity, and traumatic life events going back to her childhood. It is impossible to accurately evaluate the impact this information had on the jury's damage award. I would not assume that it had none. I would reverse for a new trial.